IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

GILBERTO PEDROSO,

        Petitioner,

    v.

MARK NOOTH, Superintendent,
Snake River Correctional Institution,

        Respondent.

Civil No. 2:13-cv-00644-AC

FINDINGS AND RECOMMENDATION

    THOMAS J. HESTER
    Assistant Federal Public Defender
    101 SW Main Street
    Suite 1700
    Portland, OR 97204

        Attorney for Petitioner

    ELLEN F. ROSENBLUM
    Attorney General
    NICK M. KALLSTROM
    Assistant Attorney General
    Department of Justice
    1162 Court Street NE
    Salem, OR 97301

        Attorneys for Respondent

1 - FINDINGS AND RECOMMENDATION -

ACOSTA, Magistrate Judge.

Petitioner, an inmate at the Snake River Correctional Institution, brings this habeas corpus action pursuant to 28 U.S.C. § 2254.  For the reasons that follow, the Amended Petition for Writ of Habeas Corpus (#12) should be DENIED.

## BACKGROUND

On May 2, 2006, Petitioner stabbed his ex-girlfriend several times with a large knife as she ran from her residence in an attempt to get away from him.  Resp. Exh. 105, pp. 27, 60-61, 147. Several people witnessed the stabbing.  On May 11, 2006, a Multnomah County grand jury indicted Petitioner on one count of Murder Constituting Domestic Violence. Resp. Exh. 102. The case was tried to a jury, who found Petitioner guilty of murder.[1]  The trial judge sentenced Petitioner to life imprisonment with the possibility of release upon parole after 25 years.  Resp. Exhs. 101, 107, p. 56.

Petitioner filed a direct appeal asserting single assignment of error, that the trial court erred in denying a motion to suppress statements Petitioner made to the police upon his arrest the day after the stabbing.  Resp. Exh. 108.  The Oregon Court of Appeals affirmed without opinion, and

---

[1]Petitioner's trial counsel argued to the jury that Petitioner committed only manslaughter because, at the time of the homicide, he was suffering from an extreme emotional disturbance. Resp. Exh. 106, p. 94.  While ten of twelve jurors believed Petitioner was suffering from an extreme emotional disturbance, the jury unanimously agreed that there was not a "reasonable explanation" for the disturbance. Resp. Exh. 107, pp. 32-34; *see also* Or. Rev. Stat. § 163.135 (providing for "an affirmative defense to murder" if the "homicide was committed under the influence of extreme emotional disturbance when such disturbance is not the result of the person's own intentional, knowing, reckless or criminally negligent act, and for which disturbance there is a reasonable explanation").

the Oregon Supreme Court denied review. *State v. Pedroso*, 228 Or. App. 756, 210 P.3d 945, *rev. denied*, 347 Or. 43, 217 P.3d 689 (2009).

Petitioner then filed a petition for state post-conviction relief ("PCR"), alleging several claims of ineffective assistance of trial counsel. Resp. Exh. 113. The State moved to dismiss the PCR petition under Or. R. Civ. P. 21A(8) for "failure to state ultimate facts sufficient to constitute a claim[.]" The State argued, *inter alia*, that Petitioner failed to allege any prejudice as necessary to state a claim for ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984). Resp. Exh. 119, p. 2.

In response to the State's motion, Petitioner requested a hearing and filed an affidavit in support of his PCR petition. Resp. Exh. 120. At the hearing on the State's motion, the PCR trial judge explained:

> In order to be able to proceed on post-conviction relief [petitioner] not only needs to show that his attorney, trial attorney, failed to perform in a constitutionally adequate manner, but that failure changed the result of the -- or likely to have changed the result of the trial.
>
> The difficulty is even if I assume [petitioner's] complaints in his affidavit relate to a constitutional inadequacy, there's no showing of any nature that that impacted his trial in any way.

Resp. Exh. 120, p. 12. The trial judge then addressed each of Petitioner's claims individually, and concluded "I find nothing to support, even from an arguable standpoint, supporting [petitioner's] claim for petition for post-conviction relief." Resp. Exh. 120, p. 13. Accordingly, the trial judge granted the State's motion to dismiss. Resp. Exh. 120, p. 13.

Petitioner appealed, arguing the PCR trial judge erred in granting the State's motion to dismiss. Resp. Exh. 123. The Oregon Court of Appeals dismissed the appeal, concluding that the

3 - FINDINGS AND RECOMMENDATION -

PCR trial court's decision was not appealable. *Pedroso v. Nooth*, 251 Or. App. 688, 690, 284 P.3d

1207 (2012). The Oregon Supreme Court denied review. *Pedroso v. Nooth*, 353 Or. 203, 296 P.3d

1275 (2013).

On April 13, 2013, Petitioner filed his habeas corpus action in this Court. In his Amended

Petition for Writ of Habeas Corpus, Petitioner alleges the following grounds for relief:

**Ground One:** Petitioner's Fifth Amendment right to not be compelled to incriminate himself was denied when the trial court denied his motion to suppress statements and permitted the prosecution to use [Petitioner's] compelled statements against him at trial.

**Ground Two:** Petitioner's Sixth Amendment right to the effective assistance of counsel was denied because trial counsel was ineffective in his pretrial representation of Petitioner in the following particulars:

A.    Counsel failed to adequately communicate and consult with his client before trial. Counsel seldom, if ever, visited with Petitioner and would not accept his telephone calls;

B.    Counsel failed to adequately investigate the case. Counsel never had an investigator meet with Petitioner to discuss the investigation of the case or advise [Petitioner] of how any investigation was progressing;

C.    Counsel failed to provide Petitioner with a copy of his discovery or give him an adequate opportunity to review that discovery with counsel;

D.    Counsel failed to adequately investigate and prepare a psychological defense of Extreme Emotional Disturbance (EED). Although counsel pursued such a defense at trial, he did not have [Petitioner] evaluated by a psychologist until more than eight months after the underlying events and, even then, counsel failed to adequately advise Petitioner about the results of the evaluation. Counsel also failed to investigate [Petitioner's] background and history in support of the EED defense.

E.    Counsel failed to diligently pursue the possible negotiated resolution of the case short of trial or to share the results of any attempts at negotiation that were undertaken.

**Ground Three:** Petitioner's Sixth Amendment right to the effective assistance of counsel was denied because trial counsel was ineffective in his trial representation of Petitioner in the following respects:

A.  Counsel failed to adequately present the EED defense at trial. Counsel failed to call a suitable expert and otherwise seek to establish the defense solely through cross-examination of the State's witnesses;

B.  Counsel failed to object to jury instructions permitting Petitioner's jury to convict him upon a non-unanimous jury and failed to object to his actual conviction by a non-unanimous jury. The jury, which initially reported being deadlocked 8-4, eventually rejected [Petitioner's] EED defense, and convicted him of murder by a 10-2 vote, in violation of his Sixth Amendment right to a jury trial.

**Ground Four:** Petitioner's Sixth Amendment right to the effective assistance of counsel was denied because trial counsel was ineffective in his sentencing representation of Petitioner in that counsel failed to advise [Petitioner] about his right to allocution at sentencing, which resulted in his not speaking to the victim's family. Had counsel advised [Petitioner], he would have spoken to the family. Petitioner suffered prejudice because the Oregon Board of Parole will use his failure to address the family against him when [Petitioner] comes up for parole consideration.

In his Brief in Support of Amended Petition for Writ of Habeas Corpus, Petitioner addresses only the claim alleged in Ground One. Respondent argues all of Petitioner's claims were denied in state-court decisions that were not contrary to or an unreasonable application of clearly established federal law and are, therefore, entitled to deference.

## LEGAL STANDARDS

Under 28 U.S.C. § 2254(d), an application for a writ of habeas corpus shall not be granted unless the adjudication on the merits in State court:

(1) was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the
facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Moreover, "a determination of a factual issue made by a State court shall be

presumed to be correct. The applicant shall have the burden of rebutting the presumption of

correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

In *Williams v. Taylor*, 529 U.S. 362, 386-389 (2000), the Supreme Court construed this

provision to require federal habeas courts to be highly deferential to the state court decisions under

review. In *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398-1402 (2011), the Court reiterated the highly

deferential nature of federal habeas review, and limited federal review "to the record that was

before the state court that adjudicated the claim on the merits."

"'Clearly established Federal law' is the governing legal principle or principles set forth by

the Supreme Court at the time the state court renders its decision." *Lambert v. Blodgett*, 393 F.3d

943, 974 (9th Cir. 2004), *cert. denied*, 546 U.S. 963 (2005). An "unreasonable application" of

clearly established federal law occurs when "the state court identifies the correct governing legal

principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts

of the prisoner's case." *Lambert*, 393 F.3d at 974.

"The state court's application of law must be objectively unreasonable." *Williams*, 529 U.S.

at 411. "[A] federal habeas court may not issue the writ simply because that court concludes in its

independent judgment that the state court decision applied clearly established federal law

erroneously or incorrectly." *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002) (internal citations

omitted).

"[A] habeas court must determine what arguments or theories . . . could have supporte[d] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Pinholster*, 131 S. Ct. at 1402 (citing *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 786 (2011)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 131 S. Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Section 2254(d) is a "'guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.'" *Hibbler v. Benedetti*, 693 F.3d 1140, 1148 (9th Cir. 2012) (quoting *Harrington*, 131 S. Ct. at 786) (other internal quotation omitted), *cert. denied*, 133 S. Ct. 1262 (2013). "'[T]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Hibbler*, 693 F.3d at 1146 (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

## DISCUSSION

### I.    Trial Court Error - Suppression of Petitioner's Statements

Prior to his trial, Petitioner moved to suppress statements made to the police the day after the murder. Petitioner argued he had invoked his right to silence at the time he received *Miranda* warnings by answering "No" when asked if he wished to talk to the police.

At the hearing on Petitioner's motion to suppress, Petitioner's probation officer Carmen Montano testified for the state. She arrested Petitioner the morning after the murder. Resp. Exh.

103, p. 64.  After arresting Petitioner, Officer Montano immediately advised him of his *Miranda*

rights, and Petitioner confirmed that he understood those rights.  Resp. Exh. 103, pp. 65, 76, 79.

As she had in the past, Officer Montano communicated with Petitioner in Spanish.  Resp. Exh. 103,

pp. 60-61.  Officer Montano stated that she did not attempt to question Petitioner at that point.

Resp. Exh. 103, p. 65.  She testified that Petitioner did, however, make several statements to her,

"Uhm, one of the things he also said is that he had been trying to call me the day before and that

he had wanted to talk to me then as well."  Resp. Exh. 103, pp. 65-66.

When the detectives assigned to the case, Detectives Courtney and Rhodes, arrived at the

scene of Petitioner's arrest, Detective Courtney asked Officer Montano to again advise Petitioner

of his *Miranda* rights, which she did in Detective Courtney's presence.  Resp. Exh. 103, p. 66.

Officer Montano testified to Petitioner's response:

> The second time I mirandized him when he was already in handcuffs, when I got to
> the--I believe it's the last line on the form, it says: Knowing your rights, would you
> still like to talk to me.  He responded, No, I wanted to talk to you yesterday and you
> weren't available.

Resp. Exh. 103, p. 68.  Montano explained that, based on his previous statements to her, she did

not believe that Petitioner had intended to invoke his *Miranda* rights:

> MONTANO:    My interpretation of the statement was:  It's too late to talk to you.
> I wanted to talk to you about something yesterday, and I couldn't get
> a hold of you.  What's the point of talking to you now.
>
> COUNSEL:    And did you understand that that statement was directed to you personally?
>
> MONTANO:    Yes.

* * *

8 - FINDINGS AND RECOMMENDATION -

> MONTANO: I took it to mean he was directing it to me personally, also because
> of some things he had said to me previously that morning.

Resp. Exh. 103, p. 69. Officer Montano explained that at no time did Petitioner indicate that he did

not want to talk to the police about what had happened. Resp. Exh. 103, p. 70.

Petitioner was later transported to the police station, where he was interviewed by Detective

Rhodes, with Montano translating. Resp. Exh. 103, p. 73. Prior to the interview, Officer Montano

advised Petitioner a third time of his *Miranda* rights. Petitioner again confirmed he understood

those rights and was cooperative throughout the interview. Resp. Exh. 103, pp. 75-76.

In response to Probation Officer Montano's testimony, Petitioner's trial counsel argued a

statement in Detective Courtney's police report contradicted Montano, and evidenced an invocation

of Petitioner's right to remain silent. In his report, Detective Courtney stated Petitioner said "no"

after Probation Officer Montano asked Petitioner whether he was willing to talk to her after

advising him of his *Miranda* rights. Resp. Exh. 130, p. 38. Counsel did not call Detective

Courtney to the stand at the suppression hearing to explain the statement, and evidence at the

hearing established that Detective Courtney did not speak Spanish.

The trial judge denied Petitioner's motion to suppress, explaining at some length the bases

for his decision:

> All right. In deciding on a motion to suppress statements and admissions
> under the *Miranda* decision, the Court must make a judgment on the advice given,
> whether it was sufficient; secondly, whether the defendant understood the advice;
> and thirdly, whether the defendant did agree to speak after understanding that he had
> the right to remain silent, and the other advice given to him. Or phrased differently,
> whether he invoked the right under the Fifth and Fourteenth Amendment, the Sixth
> Amendment, and also whether -- if he invoked the right to counsel under the Sixth
> Amendment and the Fourteenth Amendment.

I'm gonna break down these components of advice, understanding, and agreement to speak in these three categories. . . . I find that the *Miranda* warnings were given and the proper advice was given on three different occasions.

The first occasion when Probation Officer Montano was there with another -- in the company of another probation officer at the Baldwin apartment of Ms. Williams after she first encountered the defendant. Shortly thereafter she gave advice, valid *Miranda* warnings based on memory, and she did this in a language which the defendant understood.

\* \* \*

So the first form of advice given in -- from memory, I find that it was -- the proper advice was given, and I find that there was understanding by the defendant of that advice. There -- after the advice was given, no questions were asked of the defendant. The defendant did not indicate an unwillingness to answer. He gave general indication then, and at all times on the day of his arrest, that he was cooperative, that he was willing to speak.

\* \* \*

On the three *Mirandas* that were given -- I just dealt [with] the first one. On the second *Miranda* the testimony was when the defendant was taken out to a police vehicle in handcuffs and Detective Courtney arrived, Detective Courtney requested that Probation Officer Montano give the defendant his *Miranda* warnings off of the form. . . .

The advice was adequate. and I find that the defendant understood these rights. They were given to him -- they were printed on this form in the Spanish language, and . . . Probation Officer Montano also advised the defendant in Spanish.

Now at this point the defendant was handcuffed. He was in restraints. The testimony of -- I accept the testimony of Officer Montano in the complete sense. What we have here is the police report of -- . . . page 9 of Detective Courtney's police report.

It states: Carmen Montano read Pedrosa a Spanish language advice of rights form after he was placed in the back of a Portland Police Bureau marked car. Montano told me -- and I make a finding here that Detective Courtney did not speak or understand the Spanish language and that the communication between Probation Officer Montano and the defendant Pedroso was in the Spanish language.

So reading more from the report, it states:  Montano told me Pedroso acknowledged with a yes answer when asked if he understood his rights.  Montano asked Pedroso at that time if he wanted to talk to the police, and his reply was, quote, no.  Then it goes on to talk about the consent search form.

I can certainly understand why defense counsel . . . is arguing that the form -- this page 9 which states the word "no" constitutes an invocation of rights and that that, even though there was no questioning -- and I find there was no questioning on the second giving of the *Miranda* warnings at the Baldwin Street address when the defendant was in the police care and that in fact the warnings -- this was somewhere around the 11:00 hour, a.m., on this date, and the defendant was not questioned until approximately 2:25 or 2:30 in that range, p.m., on that date at the detective division, Portland Police Bureau, downtown.  That's when the questioning took place.

But defense counsel argues that rights were invoked out there at the Baldwin address and that the invocation of rights then carried forward and nullified what the State has argued was a valid waiver of -- a new mirandizing and valid waiver of rights that occurred at approximately 2:25 p.m.

This is the problem with that argument and the reason that I cannot make a finding that accepts that argument.  I have made a credibility finding already that I accept the testimony of Probation Officer Montano.  Probation Officer Montano was asked specifically by both attorneys on the witness stand in the hearing today on these motions what occurred with reference to that.

I accept her full testimony that the defendant Mr. Pedroso, when asked . . . [u]nderstanding your rights, are you willing to talk to me?  And I find that his response was, no, I am not willing to talk to you, Probation Officer Montano -- with words to the effect -- because I tried to talk to you yesterday, and indicating some irritation with her, essentially saying, today is too late, and I don't have anything to say to you.

But as I accept her testimony in its full context as opposed to this partial description of what happened, which I believe is inaccurate, set out in Exhibit 101, because it represents an obvious misunderstanding by Detective Courtney, I can't let that obvious misunderstanding override the specific testimony of Probation Officer Montano.

The testimony that I heard from her was that the defendant gave no indication that he was unwilling to talk to the Portland police. . . .

11 - FINDINGS AND RECOMMENDATION -

And so I do not find, as the defense is urging me to find, that there was invocation of his rights at approximately 11:55 or thereabouts, a.m., on May 3rd, the date of the arrest.

All right.  So there's no invocation of rights, and I find he -- to the contrary, the only indication he gave was he did not want to speak with Probation Officer Montano, and that did not indicate an unwillingness to speak to the police.  And as a matter of fact, at all times this defendant appeared willing and sometimes eager to talk to the police about what had occurred with reference to the victim Ms. Rhone.

Okay.  The third mirandizing occurred at about 2:29 p.m. on this date of May 3rd.  It was at the Portland Police division in downtown Portland.  I find that at that time Probation Officer Montano was present along with Detective Rhodes.  At that time the defendant was again given appropriate and valid advice of his rights. . . .

I find that the defendant indicated he understood his rights.  I find that the rights were given in a language the defendant understood and that the defendant understood the translation that was made by Officer Montano. . . .  I also find that the defendant, having been advised of his rights, voluntarily waived his rights and indicated a willingness to talk and at no time did he invoke his rights.

Resp. Exh. 103, pp. 117-124.

Under the Fifth Amendment to the United States Constitution, a suspect cannot be compelled to be a witness against himself.  This has been interpreted to mean that a suspect has a right to remain silent following his arrest and can refuse to respond to police questioning.  *Miranda v. Arizona*, 384 U.S. 436, 479 (1966).  Like most rights, however, the right to remain silent can be waived by a suspect who, after being informed of his right to remain silent, agrees to talk to police.  *Id.* at 444, 478–79.

A valid waiver of *Miranda* rights depends upon the totality of the circumstances, including the background, experience and conduct of the defendant.  *Colorado v. Connelly*, 479 U.S. 157, 168–69 (1986); *Lego v. Twomey*, 404 U.S. 477, 488–89 (1972); *Terrovona v. Kincheloe*, 912 F.2d

12 - FINDINGS AND RECOMMENDATION -

1176, 1180 (9th Cir. 1990). The waiver need not be express as long as the totality of the circumstances indicates that the waiver was knowing and voluntary. *North Carolina v. Butler*, 441 U.S. 369, 373 (1979). "Where the prosecution shows that a Miranda warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent." *Berghuis v. Thompkins*, 560 U.S. 370, 384 (2010).

A suspect who initially waives this right and speaks to police can later change his mind and assert his right to remain silent by unequivocally and unambiguously communicating to police that he wants to end the interview. *Berghuis*, 560 U.S. at 381–82 (concluding invocation of right to remain silent must be unambiguous to trigger termination of interrogation). The determination of whether a suspect has unambiguously invoked his right to remain silent is an objective inquiry. *See Berghuis*, 560 U.S. at 381 ("[a] requirement of an unambiguous invocation of Miranda rights results in an objective inquiry that 'avoid[s] difficulties of proof and . . . provide[s] guidance to officers' on how to proceed in the face of ambiguity")(quotation omitted). A suspect must articulate his desire to remain silent "sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be" an invocation of the right to remain silent. *Davis v. United States*, 512 U.S. 452, 459 (1994); *DeWeaver v. Runnels*, 556 F.3d 995, 1001 (9th Cir.), *cert. denied*, 558 U.S. 868 (2009).

The trial judge correctly identified the facts and the controlling United States Supreme Court precedent in denying Petitioner's motion to suppress based on his statement to Probation Officer after the second time she advised him of his *Miranda* rights. Petitioner's statement that he did not want to talk to Probation Officer Montano because of his frustration that she was not

available the day before, in the overall context, was an expression of passing frustration toward her personally and not a manifestation of a desire to refuse to speak to the police in general. Petitioner's conduct following that isolated statement suggests the trial judge was correct when he concluded the statement was merely a manifestation of his frustration with Probation Officer Montano. Considering the context in which his statement was made, this Court cannot conclude that all fairminded jurists would agree that the trial judge was wrong in denying Petitioner's motion to suppress. *Richter*, 131 S.Ct. at 786.

Moreover, Petitioner has not demonstrated any prejudice from the admission of his statements to Detective Rhodes at the police station after the third time Probation Officer Montano advised him of his *Miranda* rights. Harmless error review applies to the introduction of Petitioner's confession. *Arizona v. Fulminante*, 499 U.S. 279, 295 (1991). "Reversal is required if the constitutional error 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Sessoms v. Grounds*, 776 F.3d 615, 629 (9th Cir. 2015) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (internal quotation marks and citations omitted)), *pet'n for cert. filed*, 83 U.S.L.W. 3892 (May 22, 2015). The question then, "is whether [the Court] can fairly determine that [Petitioner's] confession did not substantially sway the jury to convict him. . . ." *Sessoms*, 776 F.3d at 630.

Multiple witnesses saw Petitioner stab the victim to death. The State presented evidence that Petitioner went to the victim's home, armed with a knife, three times that day. He stabbed her multiple times on his third trip immediately after she ran outside. The evidence of Petitioner's guilt

was overwhelming, and the suppression of Petitioner's statements would not have made a difference in the outcome of the trial.

The trial judge's decision denying Petitioner's motion to suppress his statements was not contrary to or an unreasonable application of *Miranda* and its progeny. Even if it was, however, any error in declining to suppress the statements was harmless. Accordingly, Petitioner is not entitled to habeas corpus relief on the claim alleged in Ground One.

## II.    Ineffective Assistance of Counsel

As noted, Plaintiff did not address the ineffective assistance of counsel claims alleged in Grounds Two, Three, and Four in his Brief. A petitioner seeking federal habeas relief bears the burden of showing the court he is entitled to relief. *Visciotti*, 537 U.S. at 24; *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004), *cert. dismissed* 545 U.S. 1165 (2005). Pursuant to 28 U.S.C. § 2248, "[t]he allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true."

The Court has reviewed the record and finds Petitioner has not met his burden of showing he is entitled to relief on the claims alleged in Grounds Two, Three, and Four of his Amended Petition. The Court's review of the state PCR proceedings confirms that the PCR trial judge reasonably applied federal law in considering and rejecting each of Petitioner's claims of ineffective assistance of trial counsel. As such, Petitioner is not entitled to habeas corpus relief under 28 U.S.C. § 2254.

## RECOMMENDATION

For these reasons, the Amended Petition for Writ of Habeas Corpus (#12) should be DENIED, and judgment of DISMISSAL should be entered.

Because Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability should be DENIED. *See* 28 U.S.C. § 2253(c)(2).

## SCHEDULING ORDER

The above Findings and Recommendation are referred to a United States District Judge for review. Objections, if any, are due July 8, 2015. If no objections are filed, review of the Findings and Recommendation will go under advisement that date.

A party may respond to another party's objections within 14 days after the objections are filed. If objections are filed, review of the Findings and Recommendation will go under advisement upon receipt of the response, or on the latest date for filing a response.

DATED this 25th day of June, 2015.

John V. Acosta
United States Magistrate Judge

\\Port\Acca\Shares\Shares\Acosta Share\13-644pedrosa0624f&r.wpd